# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

FRANK M. NEFF                           *

Plaintiff                               *

v                                       *     Civil Action No. RDB-16-3144

ECI-E PRISON WARDEN, *et al.*           *

Defendants                              *

***

## MEMORANDUM OPINION

Defendants Wexford Health Source, Inc., Ruth Pinkney, P.A., and Jason Clem, M.D. (hereinafter Medical Defendants) filed a Motion to Dismiss or for Summary Judgment (ECF 37) in response to the above-entitled self-represented civil rights complaint. The remaining Defendants, Warden Kathleen Green, Secretary Stephen Moyer, and "the Commissioner of Correction" (hereinafter Correctional Defendants), also filed a Motion to Dismiss or for Summary Judgment in response to the claims asserted against them in the same complaint. ECF 51. Plaintiff Frank Neff opposes the motions. ECF 42, 45 & 47. For the reasons that follow, the motions filed by Defendants shall be construed as Motions for Summary Judgment and shall be granted without a hearing which this Court deems unnecessary. *See* Local Rule 105.6 (D. Md. 2016).

The complaint was originally filed in the United States District Court for the District of Delaware and later transferred to this Court as all matters asserted concern events allegedly occurring in Westover, Maryland at Eastern Correctional Institution (ECI), where Plaintiff Frank Neff is incarcerated. Neff states in the original complaint that this Court is biased against him and states all of the cases he files in this Court are dismissed. ECF 1. He claimed in his original complaint that his rights were violated and he was directed to file an amended complaint.

In his amended complaint, Neff states that his First and Fourteenth Amendment rights were violated. ECF 4 at p. 2. He claims that on March 10, 2015, Peter Stanford, a physician's assistant at ECI, said that Neff needs a cane to help him walk and that he needs a hearing aid for his right ear. *Id.* at p. 3. Neff further claims that he had been prescribed medications as "keep on person" or KOP, but they were taken from him. *Id.* He states that "ECI Medical Wexford" denied the request for a cane and for a hearing aid, and also denied KOP medications. *Id.* Neff claims that he is a fall risk and that he fell twelve times in the past ten months, hurting himself "real bad" on four occasions. *Id.* at p. 4. Neff states that while medical staff claim he was selling his medical supplies, the matter was investigated in February 2015 and no proof was found. *Id.* Neff also claims there is no evidence that he presents a security threat to staff if he is given a cane. *Id.*

Medical Defendants explain that Neff is a 64 year old inmate whose notable medical issues are epilepsy and spondylopathy.[1] Neff is prescribed Dilantin to reduce his risk of seizures; however, Medical Defendants state that Neff has a long history of being non-compliant with prescribed medications wherein he either refuses to take medication or threatens not to take it for purposes of a secondary gain or sells supplies provided to him for incontinence. *See* ECF 37 at Ex. 1, pp. 8 – 9 (admission of non-compliance with Dilantin medication), 10 – 12 (report from RN he sold tape used with "pull-ups"), 20 (stated intent to refuse medication), 23 (refused morning medication), 25 (refused to allow vital sign measurement), 34 (Dilantin level sub-therapeutic due to non-compliance), 36 (refusing Dilantin), 38 (refusing all meds if not provided Mylanta), 46–48 (refusal of medication). Additionally, Neff is known to be combative and aggressive with medical staff. *Id.* at pp. 1 (threw briefs at staff because he wanted diapers

---

[1] Spondylopathy is a general term that refers to any disease of the vertebrae. *See* http://medical-dictionary.thefreedictionary.com/spondylopathy.

2

instead), 13-14 (threatened non-compliance with other medication if not allowed KOP medications), 83 (refusing blood draw because "the PA and Nurse are liars"). Although Neff is not provided with KOP medications due to his suspected history of selling his medications and medical supplies as well as his confirmed non-compliance with prescribed medications, he is still provided medication at the prison's dispensary. ECF 37 at Ex. 2.

With regard to use of a cane, Neff was prescribed a quad cane on March 19, 2015, when it was noted that he had fallen, his right knee was swollen, and he was walking with a limp. ECF 39 at p. 3, *see also* p. 5 (confirming cane was ordered). On April 8, 2015, when the cane ordered for Neff arrived at the institution, medical staff was informed that the last time Neff was issued a cane he assaulted staff with it. *Id.* at p. 7. Based on that security concern, the cane was not provided to Neff and the matter was remanded to medical staff for further consideration. *Id.* The following day, a decision was made to issue a cane to Neff with restrictions. *Id.* at p. 10. The restrictions were that the cane could only be made of wood and it would only be used by Neff when he was moving from his cell to the shower. *Id.* An additional accommodation was made to transport Neff to his medical appointments via wheelchair. *Id.*

On May 15, 2015, it was reported to medical staff by custody staff that Neff had been observed walking without assistance to his Native American meetings. *Id.* at p. 15. Given this information, coupled with his prior assault on staff with a previously issued cane, Neff was transferred to Ward C for observation and further determination of whether he required assistive devices. *Id.* On May 17, 2015, Neff was observed in the ward walking without the need for assistance; showering without assistance; and standing on his toes, reaching up to change the TV channels. *Id.* at p. 25. On May 19, 2015, it was determined that Neff could be sent back to HU

3

8-D where he would resume feed-in status after he was regularly observed walking without difficulty and with minimal limp. *Id.* at p. 30.

Medical Defendants do not address the allegation that Neff requires a hearing aid and there is no mention of a hearing loss in any of the records submitted in support of their motion. Neff appears to abandon this claim as it is not raised in his opposition response.

Correctional Defendants join in the motion filed by Medical Defendants and also assert that to the extent he asserts a cognizable claim against them, Neff has failed to exhaust administrative remedies. ECF 51.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility."

4

*Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992)

5

(there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

With respect to security staff, the Fourth Circuit has identified two slightly different aspects of a correctional official's state of mind that must be shown in order to satisfy the subjective component in the context of medical care. First, actual knowledge of the risk of harm to the inmate is required. *Young v. Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001); *see also Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) ("It is not enough that the officer should have recognized it."). Beyond such knowledge, however, the officer must also have "recognized that his actions were insufficient" to mitigate the risk of harm to the inmate

6

arising from his medical needs. *Parrish*, 372 F.3d at 303 (emphasis added); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Neff's claim regarding the decision to deny him access to his medication as "keep on person" is without merit. There is no evidence that he has been harmed in any way by this decision as he has not been denied the medication; rather, the manner of its delivery has been changed. Neff's claim regarding provision of a cane is also without merit. There is ample evidence that the reversal of the decision to provide him with a cane was based on his past assault of correctional staff and, more importantly, daily observation of his abilities to walk and perform activities of daily life without a cane or a wheelchair. There is no evidence that Neff was denied a cane without due consideration of his actual needs and his current medical issues. The complaint fails to state a claim of an Eighth Amendment violation.

Because the actions taken with regard to Neff's medical care do not violate his constitutional rights, all of the Defendants are entitled to summary judgment in their favor and the need for analysis of the defenses raised regarding qualified immunity and exhaustion of administrative remedies is obviated. A separate Order entering judgment in favor of Defendants follows.

MAY 18, 2017
Date

_____
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

7